Tarrance Ray **RISCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–01–295–CR.

Court of Appeals of Texas, Waco.

Aug. 21, 2002.

---

1. Appellants did not file a request for an extension of time in which to file the notice of appeal. *See* Tex.R.App. P. 26.3.

Daniel Burkeen, Groesbeck, for Appellant/Relator.

Robert W. Gage, Freestone County District Attorney, for Appellee/Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Tarrance Ray Rischer of possession of cocaine, and the trial court sentenced him to seven (7) years' imprisonment. In two points, Rischer argues that 1) the trial court erred in admitting hearsay testimony, and 2) the evidence is insufficient to support his conviction.

### BACKGROUND FACTS

Police executed a search warrant at the home of Keith McElroy and Rashan Daniels on December 14, 2000. Tarrance Rischer was inside the home when the police entered. After Rischer refused to cooperate with an officer ordering him to the floor, he was pushed to the ground. The officer testified that Rischer reached his arms out and then grabbed the corner of the couch. Cocaine was found under the couch where Rischer's hands had been. At trial, Daniels testified that McElroy told her that the drugs belonged to Rischer and therefore he should "take this charge." Rischer testified that McElroy asked him to take the blame because he had no prior record.

### HEARSAY TESTIMONY

In point one, Rischer argues that the trial court erred in admitting hearsay testimony. Specifically, he argues that Daniels's testimony about statements made to her by co-defendant McElroy do not meet the requirements of the statement against interest hearsay exception.

Daniels testified that after McElroy was released from jail he told her that Rischer should take this charge because the drugs belonged to Rischer. McElroy told her he knew the drugs belonged to Rischer because he sold them to him. Rischer objected to this testimony and a hearing was conducted outside the presence of the jury. The trial court overruled his objection and admitted the testimony as a statement against interest.

### Applicable Law

In order for a declaration against interest to be admissible under Rule 803(24) of the Texas Rules of Evidence, the statement must be self-inculpatory with corroborating circumstances to indicate the trustworthiness of the statements. See Dewberry v. State, 4 S.W.3d 735, 751 (Tex.Crim.App.1999); Bingham v. State, 987 S.W.2d 54, 56–57 (Tex.Crim.App.1999). An admission against a co-defendant declarant's interest can be admissible against the defendant so long as it is sufficiently against the declarant's interest to be reliable. See Dewberry, 4 S.W.3d at 751 (citing Williamson v. United States, 512 U.S. 594, 603, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)).

The corroboration of a statement against interest must be sufficiently convincing to clearly indicate the trustworthiness of the statement. See Dewberry, 4 S.W.3d at 751. The courts have considered a number of factors in reviewing evidence of corroboration of the statement: (1) whether guilt of the declarant is inconsistent with guilt of the defendant; (2) whether the declarant was so situated that

he might have committed the crime; (3) the timing and spontaneity of the declaration; (4) the relationship between the declarant and the party to whom the statement is made; and (5) the existence of independent corroborative facts. *Id.; see also Bingham*, 987 S.W.2d at 58; *Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App. 1994).

### Analysis

We first examine whether McElroy's statements to Daniels were sufficiently self-inculpatory. The record reflects that McElroy's statements inculpated both himself and Rischer in the delivery of cocaine. Because McElroy's statements implicated him in the possession and delivery of cocaine, this Court concludes that his statements were sufficiently self-inculpatory to be reliable. *See Dewberry*, 4 S.W.3d at 751.

■ We next review whether there was sufficient corroboration of McElroy's statements. First, McElroy's statement that he knew the cocaine belonged to Rischer because he sold it to him is consistent with the guilt of both men. Second, Rischer and McElroy were in the residence together, and thus, McElroy was so situated that he might have committed the crime. Third, the timing and spontaneity of the statement indicates the trustworthiness of the statement. The statement was made by McElroy as he picked up Daniels from jail. The voluntary statement, although made several days after the arrest, was not the product of coercion or questioning. Fourth, McElroy's incriminating statements were made to his live-in girlfriend,

and thus, he had no reason to believe that statements made to her would be used against him.

Finally, the State offered evidence corroborating McElroy's statement. Officer Craig testified that upon entering the home McElroy ran into the kitchen. Craig testified that he pushed Rischer to the ground and he had his hands stretched out in front of him by the couch "like he was trying to shove something away from him." Officer Busby testified that cocaine was found under the couch near where Rischer's hands had been. Officer Oates testified that over $400 cash was found thrown behind the microwave where McElroy had fled. The evidence corroborates McElroy's statement to Daniels that he had sold cocaine to Rischer.

We conclude that the corroborative facts and evidence demonstrating the other factors indicate McElroy's statements were trustworthy and reliable under Rule 803(24). *See Davis*, 872 S.W.2d at 749. Thus, the hearsay accounts of McElroy's statements were admissible.[1] Accordingly, point one is overruled.

### SUFFICIENCY OF THE EVIDENCE

In point two, Rischer argues that the evidence is insufficient to support his conviction. Rischer argues that the State must prove more than his mere presence in the vicinity of the contraband to support his conviction for possession of the cocaine discovered under the couch.

■ Rischer does not specify whether his challenge is to the legal sufficiency, the factual sufficiency, or both. In such an instance, we first look to the argument and

1. We distinguish this case from *Shilling v. State*, 60 S.W.3d 280 (Tex.App.-Waco 2001 pet. ref'd). In *Shilling*, this Court found that admission of the co-conspirator's written statement after the co-conspirator asserted his right to silence violated the Confrontation

Clause. *Id.* at 282. Here, the record does not indicate that Rischer called McElroy to testify, nor does Rischer complain on appeal that his right to confront the witness has been violated.

authorities presented in the brief to dictate whether an issue challenges the legal or factual sufficiency of the evidence or both. *See Brown v. State*, 35 S.W.3d 183, 187–88 (Tex.App.-Waco 2000, pet. ref'd). Otherwise, we will construe a general sufficiency challenge as a challenge to only the legal sufficiency of the evidence. *Id.* We also may look to the relief requested for guidance. *Id.* Rischer's argument and authorities do not give us clear guidance as to whether he is challenging the legal sufficiency, factual sufficiency, or both. However, because he requests relief in the form of reversal and acquittal, and uses the term "legal sufficiency" in his prayer for relief, we will construe his challenge for legal sufficiency. *See Hoffman v. State*, 922 S.W.2d 663, 671 & n. 6 (Tex. App.-Waco 1996, pet. ref'd).

### Legal Sufficiency Standard

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim.App.1996); *Quinton v. State*, 56 S.W.3d 633, 641 (Tex.App.-Waco 2001, no pet.).

### Applicable Law

■ To prove drug possession, the State must show (1) a defendant exercised care, custody, control, or management over the drugs, and (2) that he knew he possessed a controlled substance. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim. App.1995) (en banc). When a defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Id.* at 748. Factors which have been considered affirmative links in-

clude: (1) presence when the search was executed; (2) contraband in plain view; (3) proximity to and accessibility of the contraband; (4) accused under the influence of contraband when arrested; (5) accused's possession of other contraband when arrested; (6) accused's incriminating statements when arrested; (7) attempted flight; (8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband; (11) accused's right to possession of the place where contraband was found; and (12) drugs found in an enclosed place. *See Gill v. State*, 57 S.W.3d 540, 544–45 (Tex. App.-Waco 2001, no pet.); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Despite this list of factors, there is no set formula necessitating a finding of an affirmative link, but rather, affirmative links are established by the totality of the circumstances. *See Hyett v. State*, 58 S.W.3d 826, 830–31 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd); *Porter v. State*, 873 S.W.2d 729, 732 (Tex.App.-Dallas 1994, pet. ref'd).

### Evidence

Officer Craig testified that upon entering the home he saw Rischer standing by the end of the couch. Craig ordered him to the ground, but Rischer turned his back to Craig. Craig stated that Rischer was talking on his phone and "doing something with his hands." After Rischer continued to ignore Craig's orders, he shoved Rischer to the ground. Rischer began crawling away from Craig and "had his hands stretched out in front of him laying on the ground like he was trying to shove something away from him." Craig was present when Officer Busby discovered the cocaine under the couch just a few inches from where Rischer's hands were earlier. Craig also testified that McElroy had run into the kitchen during the execution of the warrant. He testified that he did not

see McElroy throw anything as he ran. Officer Oates discovered over $400 cash behind a microwave in the kitchen.

Rischer testified that he had been in the house for just a few minutes when officers entered to execute the warrant. He stated that he voluntarily laid on the ground after realizing that the police entry was not a joke. He stated that his hands were not near the end of the couch as he laid on the ground, but rather his feet were towards the end of the couch. He testified that he was unaware of the cocaine under the couch until the police found it. Rischer further testified that while in jail McElroy asked him to "take this charge" for him.

### Analysis

■■■ Rischer argues the evidence is legally insufficient to support his conviction. The evidence shows that Officer Craig saw Rischer's hands inches away from the end of the couch where cocaine was found moments later. He also stated that Rischer looked like he was trying to shove something away from him as he laid on the ground. The following factors affirmatively linked Rischer to the cocaine: (1) his presence in the residence when the search was executed; (2) his proximity to and the accessibility of the contraband; (3) his furtive gestures; and (4) his arguable attempt to flee by crawling away from officer Craig. *See Gill,* 57 S.W.3d at 544–45; *Derrow,* 981 S.W.2d at 779. Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Rischer possessed cocaine. *Lane,* 933 S.W.2d at 507; *Quinton,* 56 S.W.3d at 641.

Accordingly, point two is overruled.

The trial court's judgment is affirmed.